THE GEORGIA RAILROAD & BANKING CO. v. MIDDLEBROOKS.

1. In an action against a railway company for killing stock on the track at night, the testimony of a witness for the plaintiff showing that the stock ran suddenly upon the track about fifteen feet in front of the locomotive, which was running down grade, and in his opinion nothing which the engineer could have done would have prevented the accident, and there being no evidence to the

contrary, the legal presumption of negligence arising out of the mere fact of the injury was rebutted, and it was error to deny a motion for a nonsuit. Let an order declaring a nonsuit be entered.          *Judgment reversed, with direction.*

February 20, 1893.

Before · Judge JENKINS. Hancock superior court. April term, 1892.

Middlebrooks sued the railroad company for damages on account of the killing by its engine and cars of two horses owned by him. There was a verdict for plaintiff for $200; defendant's motion for new trial was overruled, and it excepted. The grounds of the motion were, that the verdict was contrary to law and evidence, and that the court refused to grant a nonsuit.

On the trial the plaintiff testified: The horses were my property. One was two years and a half old and worth $125, the other a year and a half old and worth $100. I saw them after they were killed. They were on this side of Fulsom creek near the mouth of a cut, on the west side of the cut. I mean this way; they were not in the cut. The gray horse when I saw it was knocked about fifteen or twenty feet from the road on the left, and the mare was knocked on the right. It seemed they must have been standing on the road, from the position they were. There were evidences of where the train struck them. The mare was about twenty steps in front. I think she must have been "sorter" lodged up on the pilot. That was about twenty steps to the front and right of where she was struck. The horse was knocked towards the front and left, and his limbs were badly broken up. The mare was worse mangled than he was. I think it was on Monday morning after the Saturday night that I discovered them, the last of 1890 or the first of 1891. I searched for them the day they were killed, and failed to find them. The way I came to find them, the section boss and hands sent me word. The cut is about two or three hundred

yards long. Back this way the road-bed is on an embankment. You can see back this way from where the stock were killed over half a mile. The track is straight about half a mile this way; there is a curve, then it is a straight line to about where the colts were struck, and then it strikes another curve. Along that stretch of half a mile to the right of the railroad, part of it is thicket and part of it open. About where the colts were it is open field. I suppose it is open this way something over a hundred yards; it is open further than that, but there is a very small branch that courses in between below the level of the track. There was nothing to obstruct the view on either side. The country around there was open on the right, and on the left there was a swamp of a few yards in one place and a pine thicket in another, but nothing near the track. I reckon a hundred yards from the track it is all open. The engineer rides on the right hand side of the engine, I think. It was not on my premises. The stock were not struck at the east opening of a deep cut in the first curve east of Culverton towards Camak. There is another curve beyond Fulsom. They were not struck at the east mouth of the first cut, and their bodies were not there but were at the west mouth. There were no curves there, and where they were struck was right in the mouth of a cut, on level ground, that is on the track about ten or fifteen feet from the mouth of the cut. Back this way, the way the engine was going, it was full view for at least half a mile, if not over. There is a regular path across right where they were struck. There was a curve right near where they were killed, that is going east. One of them was killed about fifteen steps from it. The curve commenced where the cut begins. It is hardly perceptible where it first commences, but where it goes into the curve I suppose you can see over three hundred yards either way. I meas-

ured it last year; had some cattle killed just below there, and measured it. It is said the horses were killed by a night train. I do not mean to swear the engineer could have seen a half mile this side of the accident, at night. They were found not at or near a cut near Fulsom, but at or near the mouth of a cut between Culverton and Mayfield. They had not been broken but were colts. They were knocked from the track by a train going towards Camak.

One Brantley testified for plaintiff: Was on defendant's train the last Saturday night in December, 1890, going towards Camak, and rode from Sparta to Mayfield on the engine. Was on the engine when the horses ran across the track. It was at the east opening of a deep cut on the first curve east of Culverton towards Camak, about twelve o'clock at night. The engineer made no effort to stop or check the train, for the reason that from the time the horses came in sight he had no time to do so. I do not know positively that the engine struck the horses. Could not tell the speed of the train. The engineer said nothing that I remember about the train being behind time. He asked me at Camak if I saw these horses run across the track. From Milledgeville to Culverton the speed was very slow; from Culverton to Mayfield it was much faster. When I first saw the horses they were about fifteen feet in front of the engine, apparently running across the track. The engineer could have seen them a little sooner because they came from the side of the track on which he was sitting. He could not have stopped the engine in time to prevent striking them. I could have done nothing under the circumstances to prevent striking the horses, and do not believe the train could have been stopped after they first came in sight, because it was rolling rapidly down grade through a deep cut and a curve that gave view of not more than one hundred feet ahead.

to the best of my judgment. While I was on the engine the engineer was attending to his duties.

J. B. Cumming, M. P. Reese and Bryan Cumming, for plaintiff in error.

Seaborn Reese, by J. H. Lumpkin, *contra.*